UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALLEN CORY CAMPBELL,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>　　　　　　Defendant. | CASE NO. 3:16-cv-05386 JRC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

　　　This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States Magistrate Judge, Dkt. 4). This matter has been fully briefed (*see* Dkt. 9, 10, 11).

　　　Plaintiff claims that he was injured following an accident at his home and a subsequent car accident, resulting in physical limitations preventing him from working. During the relevant period of disability, after the alleged onset of disability and before the

date last insured, plaintiff owned two businesses, but earned no income. As a result, the ALJ was required to analyze plaintiff's self-employment pursuant to relevant Social Security regulations to determine whether plaintiff's self-employment amounted to substantial gainful activity. The ALJ was first required to evaluate whether plaintiff's work: (1) was comparable to unimpaired individuals who are in the same or similar businesses; or (2) was not comparable to that of unimpaired individuals in same or similar businesses. To adequately assess plaintiff's self-employment to determine if plaintiff's work activity was the same as other business owners in the community, the ALJ was required to make a determination about whether plaintiff's work amounted to that of an impaired person or an unimpaired person. Here, other than a passing reference to plaintiff's work as "not comparable to those of an unimpaired individual", the ALJ included no analysis or findings regarding whether plaintiff was an impaired individual. Thus, the Court cannot adequately determine whether the ALJ properly evaluated plaintiff's self-employment at step one. Had the ALJ properly considered whether plaintiff engaged in substantial gainful activity, he may have proceeded through the sequential evaluation process and may have made a different disability determination. Because this error was not harmless, this matter is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded to the Acting Commissioner for further consideration consistent with this order.

## BACKGROUND

Plaintiff, ALLEN CORY CAMPBELL, was born in 1957 and was 50 years old on the amended alleged date of disability onset of July 9, 2007 (*see* AR. 42, 114, 251-52).

Plaintiff was self-employed and owned a mini-storage business until July 2008, which closed due to economic reasons (AR. 52-53), and a custom engraving business that closed in December 2012, due to losing money because of a snowstorm (AR. 48-49).

The ALJ determined that plaintiff is not disabled at step one (AR. 11-22). Accordingly, the ALJ did not proceed to step two and did not make a determination regarding whether plaintiff has any severe impairments (*see id.*)

At the time of the hearing, plaintiff lived in Port Orchard with his wife (AR. 46, 69).

## PROCEDURAL HISTORY

Plaintiff sets forth an uncontested procedural history in his Opening Brief (*see* Dkt. 9, p. 2) and the Court will not repeat that history. Plaintiff's second hearing was held before Administrative Law Judge Larry Kennedy ("the ALJ") on April 30, 2015 (*see* AR. 108-26). On August 5, 2015, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 8-28).

In plaintiff's Opening Brief, plaintiff raises the following issues:  (1) The ALJ erred in finding that the claimant engaged in substantial gainful activity from the alleged onset date (AOD) to the date last insured (DLI); and (2) The ALJ's errors were not harmless (*see* Dkt. 9, p. 1).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

**(1) Whether the ALJ erred in finding that the claimant engaged in substantial gainful activity from the alleged onset date to the date last insured.**

An individual who is engaged in "substantial gainful activity" is not disabled. 42 U.S.C. § 423(d) (1) (A); *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995); 20 C.F.R. § 416.920(b). Substantial gainful activity is activity that is both "substantial" and "gainful." 20 C.F.R. § 416.972 (definition of substantial gainful activity). Substantial work activity involves "significant physical or mental activities" and may include part-time work and work that pays less or involves fewer responsibilities than previous work. 20 C.F.R. § 416.972(a). "Gainful" work activity is work activity that is "usually done for pay or profit." 20 C.F.R. § 416.972(b). It is the claimant's burden to show that he or she is not engaged in substantial gainful activity. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citation omitted) (noting in a footnote that "the ALJ shares the burden at each step" due to the affirmative duty of the ALJ to assist in the development of the record as well as the non-adversarial nature of the social security application process).

Earnings may show that an individual is engaged in substantial gainful activity. 20 C.F.R. § 416.974(a)(1). Moreover, "'[w]ork activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.'" *Soria v. Callahan*, 16

F.Supp.2d 1145, 1150 (C.D.Cal. 1997) (quoting 20 C.F.R. §§ 404.1572(b), 416.972(b)); *see also Crowell v. Astrue*, No. C07-5575 FDB, 2009 WL 151164, at *5 (W.D. Wash. Jan. 20, 2009).

For a self-employed claimant, 20 C.F.R. § 404.1575 sets forth evaluation guidelines to determine whether work activity amounts to substantial gainful activity. The procedures for evaluating substantial gainful activity under 20 C.F.R. § 404.1575 are separated into general rules and three specific tests. The first general rule is that the adjudicator will consider the self-employed claimant's activities and their value to the claimant's business to decide if he or she has engaged in substantial gainful activity. *Id.* Next, the adjudicator "will not consider [the claimant's] income alone because the amount of income [the claimant] receives could depend on a number of different factors, such as capital investment and profit-sharing agreements." *Id.*

To determine whether a claimant has engaged in substantial gainful activity, the Social Security Administration ("SSA") conducts three specific tests:

> (i) Test one: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.
>
> (ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in

terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2). If the claimant has not engaged in substantial gainful activity under test one, then the SSA will consider Tests Two and Three. *Id.*

### A. *Plaintiff's Allegations of Disabling Pain and Functional Limitations*

Plaintiff alleges that he became disabled on July 9, 2007, although in his application he originally alleged disability in 2005 due to an injury following an accident at his home and a subsequent car accident (AR. 68, 77-78). Plaintiff maintains that he is disabled due to a knee injury and degenerative disc disease in his lower back (AR. 60). Plaintiff testified that his knee injury prevented him from engaging in his normal activities of daily living and working (AR. 60-61). Plaintiff also testified that his pain and pain medications prevented him from any sort of physical work and that he delegated all physical tasks from his self-employment to his wife and employees (AR. 63-64). Plaintiff also maintains that he suffers side-effects from his medication, including memory loss (AR. 66). As a result of his impairments, plaintiff alleges that he is no longer able to run, stand longer, climb ladders and stairs, or bend over (AR. 334). He also alleges that pain impacts his sleep (AR. 334).

Plaintiff's wife testified that plaintiff "didn't actually work" at their business because he could not stand on his legs for long periods of time (AR. 73-74, 79-80). Plaintiff's wife also testified that after his car accident, plaintiff had difficulty walking, bending over, picking items off of the floor, and he could not stand on his legs for longer than 10 or 15 minutes without shifting or sitting down due to constant pain (AR. 78, 81-

82). She also testified that plaintiff suffered memory loss due to pain medication (AR. 83).

### B. *The ALJ's Discussion of Whether Plaintiff Has Engaged in Substantial Gainful Activity Through Self-Employment*

Here, the ALJ did not make any determination about whether or not plaintiff has any impairments, nor did he discuss plaintiff's allegations of disabling pain and limitations. However, the ALJ determined that plaintiff fell under Test Three and noted that plaintiff's "services, although not comparable to those of an unimpaired individual, were clearly worth the presumptive substantial gainful activity amounts when considered in terms of their value to the business or when compared to the salary an owner would pay an employee to do the work that the claimant has done" (AR. 17). The ALJ also determined that plaintiff owned and operated two businesses, including a custom engraving business and a mini-storage business (AR. 17).

Although plaintiff did not earn income according to earnings reports, the ALJ noted that "this evidence alone does not preclude a finding of substantial gainful activity … [because] work activity is 'gainful' if it is the kind of work usually done for pay or profit, **whether or not a profit is realized** (AR. 18) (emphasis in original). Thus, the ALJ relied upon a vocational expert's testimony and answers to interrogatories to calculate the value of plaintiff's work activities (AR. 19-21, 11, n.1). In the interrogatories, after describing plaintiff's work in his engraving business and the storage unit business, the ALJ asked the vocational expert to answer the following questions regarding plaintiff's businesses:

(1) During the period from January 15, 2005 through December 31, 2007, what median salary or wage rate would a business owner in Washington State pay be expected to pay [sic] an employee to do the work that is described above.

(2) During the period from January 15, 2005 through December 31, 2007, what is the median salary or wage rate in Washington state for an owner of a mall-kiosk based engraving business?

(3) During the period from January 15, 2005 through December 31, 2007, what is the median salary or wage rate in Washington state for an owner of a a [sic] mini-storage business?

(4) Please explain the basis of your opinion and the source(s) of information you relied upon in forming your opinion.

(AR. 426-30 (formatting added)). The vocational expert provided the occupations that fit the description provided by the ALJ and also provided the hourly, weekly, and annual mean salaries for the occupations (*see id.*).

Based upon the vocational expert's answers regarding the mean hourly salary of the occupations, the ALJ calculated the mean hourly salary and multiplied it times the hours plaintiff worked during the relevant period—according to evidence in the record—and the ALJ determined that "the value of the claimant's work activity from January 15, 2005 through December 31, 2007 met the definition of substantial gainful activity" (AR. 19).

The Court finds that the ALJ's calculation of the value of plaintiff's work—and his subsequent determination that plaintiff engaged in substantial gainful activity—puts the cart before the horse. Specifically, the Court finds that before the ALJ could determine that Test Three applied to plaintiff's claim, the regulations require that the ALJ make a determination about whether or not plaintiff is an impaired person. As noted

above, where, as here, the plaintiff does not meet the requirements of Test One because he received no income from his self-employment, the ALJ was required to analyze plaintiff's self-employment under Test Two and Test Three, which necessarily requires an analysis of whether or not the individual is impaired. *See* 20 C.F.R. § 404.1575(a)(2). Under Test Two, the claimant has engaged in substantial gainful activity if his work activity "is comparable to that of *unimpaired individuals* in [the claimant's] community who are in the same or similar business as their means of livelihood." 20 C.F.R. § 404.1575(a)(2)(ii) (emphasis added). For Test Three, the claimant has engaged in substantial gainful activity if his work activity is not comparable to *unimpaired individuals* but still is "clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work [the claimant is] doing." 20 C.F.R. § 404.1574(a)(2)(iii) (emphasis added).

Although the ALJ stated plaintiff's claim fell under Test Three, the ALJ made only a passing reference to plaintiff's work as an impaired person, noting that his work was "not comparable to those of an unimpaired individual" (AR. 17). The ALJ essentially skipped any discussion regarding whether plaintiff was impaired, and thus the ALJ did not provide sufficient reasons to support a finding of substantial gainful activity under either Test Two or Three because he made no finding regarding whether plaintiff was an impaired person or whether his work was comparable to an unimpaired person. Indeed, here, the ALJ apparently did not even analyze plaintiff's claim under Test Two, which is a requirement of 20 C.F.R. § 404.1575. *See id.* ("If you have not engaged in substantial

gainful activity under test one, then we will consider tests two *and* three.") (emphasis added).

Regardless, for a finding of substantial gainful activity under either test, the ALJ must necessarily show either that the person is performing at a level comparable to that of unimpaired person "in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities", or that the person's work is "not comparable to that of an unimpaired person" but the work is worth the amount equal to substantial gainful activity. 20 C.F.R. § 404.1575(a)(2)(ii), (iii). An important part of the comparison between the claimant and an unimpaired person—and, necessarily, to determine whether the plaintiff is performing at a level "not comparable to that of an unimpaired person"—is the selection of a control group of unimpaired individuals. *See* SSR 83–34, 1983 WL 31256, at * 9 (Jan. 1, 1983). This control group should have self-employment similar to the claimant and maintain an adequate living in a similar community. SSR 83–34, 1983 WL 31256, at * 9 (Jan. 1, 1983). The development of this comparison must be specific, and "[e]ach work factor cited above must be described in detail, showing its contribution to the business operation. General descriptions are considered inconclusive evidence for the point-by-point comparison that is required." *Id.* Finally, "[e]vidence of the impaired individual's activities accompanied by a statement that the work is comparable to the work of impaired persons is insufficient for a sound decision." *Id.*

The ALJ did not analyze or discuss whether plaintiff is impaired, nor did the ALJ make any comparison between plaintiff and unimpaired individuals in the community. Moreover, although the ALJ noted in passing that plaintiff's services were "not

comparable to those of an unimpaired individuals", the ALJ did not articulate any specific reasons that would substantiate his comparison of the plaintiff to unimpaired individuals. *See Young v. Colvin*, No. 3:12-CV-272, 2013 WL 4591574, at *8-9 (E.D. Tenn. Aug. 28, 2013); *Bertram v. Colvin*, No. 5:14-CV-109, 2015 WL 4545770, at *10 (D. Vt. July 27, 2015) (finding ALJ erred by finding plaintiff had engaged in substantial gainful activity comparable to other business owners without any evidentiary basis) (citing *Downes v. Barnhart*, 289 F.Supp.2d 1072, 1074-75 (S.D. Iowa 2003) (case remanded to ALJ, where court could find "no evidence in th[e] record which passes muster on the ... standard [set forth in SSR 83–34]" to support ALJ's finding that claimant was "performing work activity comparable to the salary that an owner would pay an employee to do the same work"); *Gyore v. Astrue*, No. CV–07–13–PHX–DGC, 2008 WL 490623, at *2 (D.Ariz. Feb. 20, 2008) ("Because the ALJ provided only a bare conclusion that Plaintiff's activities constitute comparable worth, and failed to engage in the detailed analysis required by SSR 83–34, the ALJ erred.")); *see also Gewecke v. Astrue*, No. 4:09CV3137, 2010 WL 2545560, at *6 (D. Neb. June 18, 2010) (finding ALJ erred in evaluating all tests and finding application of Test Two inadequate, where ALJ "described plaintiff's activities and concluded that they were comparable to that of an unimpaired individual without a specific evidentiary basis"); *Schlosser v. Astrue*, 546 F.Supp.2d 664, 669 (E.D. Mo. 2007) (finding ALJ's application of Test Two inadequate, where ALJ "described plaintiff's activities and concluded that they were comparable to that of an unimpaired individual without a specific evidentiary basis").

The ALJ must "build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). Since the ALJ failed to include a discussion regarding whether plaintiff is impaired and failed to specifically compare plaintiff's work activities to individuals in the community who maintained similar self-employment, the Court is unable to engage in meaningful review of whether the ALJ properly applied Tests Two and Three or adequately considered substantial gainful activity at step one.

**(2)   The ALJ's errors were not harmless.**

"[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see Molina*, 674 F.3d at 1115. The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-19 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). Here, had the ALJ thoroughly discussed and considered Tests Two and Three, he may have reached a different determination at step one and ultimately may have determined plaintiff to be not disabled. Thus, as the ultimate disability determination may have changed, the ALJ's error was not harmless and requires reversal

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**(3)  Plaintiff's Additional Arguments Regarding the ALJ's Step One Determination.**

Plaintiff makes a number of additional arguments regarding the ALJ's determination at step one. Plaintiff argues that the vocational expert "gave information as to what the value of an average unimpaired employee or business owner typically earns", but did not answer the value of the business for impaired services (Dkt. 9, pp. 3-4). Plaintiff also asserts that the ALJ erred because the vocational expert described work classified as "light", which contradicts "the ALJ's description of [plaintiff's] physical ability and the physical job duties of the identified occupations" (Dkt. 9, p. 4). Plaintiff maintains that the vocational expert improperly opined regarding the value of an engraver with engraving duties, yet the ALJ "did not advise the vocational expert of any engraving duties" and indeed noted that plaintiff delegated all physical tasks (Dkt. 9, p. 5). Finally, plaintiff avers that the ALJ improperly relied upon plaintiff's "own valuation of his services", but asserts that such reliance was error because plaintiff's valuation of his business does not relate solely to the period in question (Dkt. 9, p. 5). However, in light of the Court's conclusion that the ALJ erred at step one, the Court need not address the additional arguments plaintiff raises.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

1  **JUDGMENT** should be for plaintiff and the case should be closed.

2  Dated this 19th day of December, 2016.

/s/ J. Richard Creatura

J. Richard Creatura
United States Magistrate Judge